JOHN F. TOBEY, Receiver, *v.* JAMES RUSSELL.

An assessment made by a receiver of a Mutual Fire Insurance Company is not rendered invalid, because made for a larger sum than the actual indebtedness of the company and the estimated expenses of collecting the assessment, the receiver being authorized by the Statute to make an allowance for uncollectable claims.

An assessment made by a receiver of such company, for double the indebtedness (less $4,000 estimated collectable out of former assessments) and 20 per cent. additional for estimated expenses, will not be set aside as excessive where the company was insolvent and not in operation, and where the assessment was made in pursuance of a decree of the Supreme Court, based upon the application of the receiver, and upon evidence submitted to the court before the making of the decree. Such an assessment is at least to to be taken as *prima facie* reasonable and correct, until some evidence is offered in proof of the contrary·

*Semble.* That such an assessment is conclusively binding in respect of the amount assessed for, in the absence of any proof of fraud or misrepresentation in the procurement of the decree.

An assesment made upon all the policies of the company, to pay the unpaid salary of its president and the bills of lawyers for professional services, even if not mathematically exact, will not be set aside if so made as to be substantially correct. Where the labor and expense of making an assessment mathematically correct is out of proportion to any good that can come of it, it is enough if it is so made as to be substantially correct.

Where money raised by previous assessments was not apportioned pro rata by the company, but some losses were paid in full, some in part, and some not at all, the receiver may assess the members of the company at the time when each loss occurred respectively, for the proportion of money which had been diverted from its proper object and paid upon said loss for their benefit. Members assessable for losses to which money raised on account of other losses has been applied, may be asssessed for its reimbursement.

Where a loss has never been assessed for by a company, but paid out of money hired by them, an assessment is valid, if made upon parties whose policies were in force at the time of said loss, for the amount paid on account of said loss.

ASSUMPSIT by the plaintiff, as Receiver of the National Mutual Fire Insurance Company, to recover of the defendant, one of its members, a certain assessment made upon him by the plaintiff in his capacity as Receiver, under a policy of insurance effected by the defendant with the Company.

The case was tried at the December term 1867, of the Court of Common Pleas for the County of Providence, before Mr. Justice Burges, when, after the receiver had testified as to the method

adopted by him in making his assessment, the defendant asked the court to rule that the assessment was erroneous and must be set aside for certain reasons alleged by him, and upon the court's refusal so to do, alleged exceptions, upon which his motion for a new trial was heard at the present term of the Supreme Court.

The testimony of the receiver respecting the amount for which he made his assessment was as follows :—

" After my appointment, and before making the assessment, I examined the books of the company, and the character and financial condition of the persons upon whom the assessment was to be made, and found that of the $8354 77 still due, on assess-ments already made, not more than $4000 could be considered collectable, and that not more than 50 per cent of the amount which should be thereafter assessed upon the policy holders of the company, could be realized. I then, at the October term, 1866, of the Supreme Court, applied to said court for instructions in regard to the proper mode of making an assessment to pay the indebtedness of the company, and this is a copy of my application. [Witness presents copy of application.] Upon hearing this application, and the affidavits of myself and of Mr Searle, who has been for a long time in the employ of the Company, and engaged in making and collecting assessments, and has had a great deal of experience in the matter, said court passed a decree containing certain instructions, allowing me to make an assessment for double the indebtedness of the company, (less $4000 estimated collectable out of former assessments,) and 20 per cent additional for expenses and my compensation, of which this paper which I hold in my hand is a copy. [Witness presents a copy of decree.] I then proceeded to make an assessment in the following manner :—

I found the indebtedness of the company on the 1st day of February, A. D. 1867, to be :  -  -  $23,979 58
I estimated that of the amount due on previous as-
sessments I could collect  -  -  4,000 00

Leaving to be raised by new assessments  -  $19,979 58

To allow for uncollectable assessments, bad debts,
  etc., as stated in the affidavits, and application
  for instructions, I double this, making    -    $39,959 16
.And add for expenses 20 per cent.    -   -    7,991 83

Making in all to be assessed for    -   -    $47,950 99

Such other portions of his testimony as are material to the case, as well as all the objections raised by the defendant to his mode of making the assessment, are stated with sufficient fulness in the opinion of the court.

*Ashley, for defendant,* cited in support of his exceptions, *People's Ins. Co.* v. *Babbitt,* 7 Allen, 235; *Traders Mut. Fire Ins. Co.* v. *Stone,* 9 Allen, 485; *Slater Mut. Fire Ins. Co.* v. *Barstow,* 8 R. I. 393. *Cooper* v. *Shaver,* 41 Barb. S. C. 151.

*Tobey, pro seipso, contra,* cited *Bangs* v. *Gray,* 2 Kernan, 477; *Shaughnessy* v. *Rensellaer Ins. Co.,* 21 Barb. S. C. 608; *Brown* v. *Williams,* 28 Me. 254; *Jones* v. *Sisson,* 6 Gray, 288; *People's Eq. Fire Ins. Co.* v. *Babbitt,* 7 Allen, 235; *Fayette M. F. Ins. Co.* v. *Fuller,* 8 Allen, 27.

DURFEE, J. We will consider the exceptions in the order in which they have been presented.

1. The first exception is, for the refusal of the court below to declare the assessment made by the receiver erroneous and to set it aside, because made for double the indebtedness of the company, (less $4,000) with twenty per cent. additional for expenses; and for the refusal of the court to rule that it should have been for the indebtedness only, and the expense of collection. The assessment was made in pursuance of a decree of the Supreme Court, under a statute of the State, (Pub. Laws, ch. 615), which provides that the receiver shall, under decree of the Supreme Court, or some Justice thereof for that purpose, make, pursuant as far as may be to the charter of the Company, such further assessments in addition to those made by the company "as may be necessary for the payment of the debts of the corporation, with the incidental expenses of assessing and collecting the same, and all the cost and expenses of closing up

the business of such corporation,"&c., "including such reasonable compensation of such receiver as may be allowed by said Court, or some Justice thereof." In support of his first exception, the defendant urges, that the assessment should have been only for the indebtedness of the company and the expense of collection. But clearly, the statute to which we have referred does not restrict the receiver to the making of so limited an assessment. Such an assessment, by not allowing for uncollectable claims, would be morally certain to fall short of the amount "necessary for the pay-ment of the debts of the corporation," and would contain no pro-vision for "the cost and expenses of closing up the business" with "reasonable compensation" for the receiver, as is expressly au-thorized by the statute. We therefore think the first exception ought not to be sustained, for the reason suggested by the de-fendant.

2. The second exception is for the refusal of the court be-low to rule that the assessment made by the receiver was for an excessive sum, and should be set aside because the amount for which he had so assessed was unreasonably large.

In support of this exception we have been referred to the cases of *People's Insurance Company* v. *Babbitt*, 7 Allen, 238, and *Traders' Mutual Fire Insurance Company* v. *Stone*, 9 Allen, 485, in which it was held that assessments for more than double the deficiency to be paid, were invalid. But in each of these cases the assessment was made, not by the receiver of an in-solvent company, for the purpose of paying debts and closing up the business, but by the directors of a company in operation; and it may well be that a rate of assessment, which would be excessive for a solvent company in operation, would not be ex-cessive for an insolvent company, closing up its business through a receiver. So far as it appears, the defendant offered no evi-dence to show that the assessment was excessive, but relied upon the fact that it was for double the indebtedness, (less $4,000,) with 20 per cent. additional for expenses, as being in itself sufficient evidence of excessiveness. But, as we have before stated, the assessment was made in pursuance of a decree of the Supreme Court, based, as it appears by the recital in the decree

and by the testimony in this case, upon the application of the receiver, and upon evidence submitted to the court before the making of the decree, and we think that an assessment so made —if not conclusively binding in respect of the amount assessed for, in the absence of any proof of fraud or misrepresentation in the procurement of the decree—is at least to be taken as *prima facie* reasonable and correct, until some evidence is offered in proof of the contrary.

We therefore overrule the defendant's second objection.

3. In addition to its indebtedness for insurance, the company owes its president $800 for unpaid salary, and three lawyers $519 05 for professional services. For the payment of these sums the receiver assessed on all policies. The defendant claimed that these charges should have been assessed for on policies in force at the time the services respectively were rendered, and he has excepted because the court refused to so rule, and to set the assessment aside as erroneous.

If we rightly understand the defendant's position, he does not claim that anybody has been assessed for these charges who is not to some extent liable for them, or that anybody who is liable has been overlooked; but he objects that the receiver has not so apportioned the assessment that each member will have to pay exactly his proportion for the services which were performed during the term of his policy—no more and no less.

An assessment for these expenses so apportioned, would doubtless be perfectly just, but we do not find that it is positively required to be so apportioned, either by the charter or the by-laws of the company. The charter does not speak of assessments for expenses, at all. The by-laws, in the article directing the order in which the funds shall be applied, require that they shall first be applied to the payment of expenses, and in the following article provide that "assessments on the policies may be made by the directors whenever it is necessary to pay expenses or losses." The rule of assessment for expenses is thus left to be determined by the general law. In determining what that rule should be, we think we ought to bear in mind that the business of insurance is a practical business, and

therefore should not be unnecessarily hampered by methods which cannot be conveniently pursued by practical men. An insurance company is not expected to keep an accomplished mathematician, to work out the problem of an assessment, according to the laborious processes which would be necessary to answer the requirement of the defendant. To pursue such a method, even in regard to the salary of a president, supposing the company to have been in full operation with policies daily commencing and expiring, would be difficult, if not impossible ; to do so in regard to a lawyer's bill, where the charges are in many instances for services covering periods more or less indefinite, would be still worse. Where the labor and expense of making an assessment mathematically exact, is so out of proportion to any good that can come from it, the amount to be assessed for being comparatively small, we think it sufficient if the assessment is so made as to be substantially correct. In this case it is not shown that any material inequality will result from the assessment as made by the receiver ; and therefore we do not think it ought to be set aside and the receiver put to the expense of making a new one.

4. The fourth exception is, for the refusal of the court to rule that the assessment was erroneous, and should, be set aside for three reasons which are set forth in the exception. The first reason assigned is " because the receiver in making said assessment, has proceeded as if the money collected on the former assessments had been applied *pro rata* to the different claims against the company, although some of the loses had been paid in full, some in part and some not at all, out of the money previously collected." The exception does not show in what way the policy holders would be injuriously affected by the alleged mode of assessment. If we look to the testimony of the receiver, given in this case and by agreement made a part of the record, for explanation upon this point, we find that he does not state that he " had proceeded as if the money collected on the former assessments had been applied *pro rata* to the different claims against the company," but, on the contrary, he states

that he proceeded in another mode, and we therefore do not think the exception can be sustained for the reason first assigned.

The receiver does state however, in his testimony, that the money raised by previous assessments "was not apportioned *pro rata* by the company, but some losses were paid in full, some in part, and some not at all." He also says; " I proceeded to assess upon the members of the company at the time when each of these losses occurred, respectively, the proportion of such loss which remained unpaid by them : that is to say, I assessed them for the proportion of money which had been diverted from its proper object, and paid upon said loss for their benefit." The defendant, assuming that the different losses are payable to some extent by different persons, alleges this proceeding on the part of the receiver as another reason why the assessment should be set aside. He claims that in so far as the losses have been paid, the persons originally assessable for them are discharged from further liability. It is undoubtedly true, that the losses having once been paid will not have to be paid again, and that therefore the persons originally assessable to pay them will not have to be assessed to pay them again. But may they not be assessed to reimburse the money out of which such losses have been paid in full or in part ? We think they may. The directors who diverted the funds may thus have made themselves personally liable to the claimants injured thereby, for the amount so diverted ; but we do not see why the members assessable for the losses to which the money has been applied, may not be assessed for its reimbursement, the same as if the money had been hired or borrowed for the payment of the losses, if the receiver thinks proper to treat the matter in that way. That money may be borrowed for the payment of losses, we shall show more fully in a subsequent part of this opinion ; and when money is borrowed for that purpose, we think the members originally assessable for the loss to which it has been applied, are the members to be assessed for its reimbursement.

Three cases have been cited for the defendant on this point ; one of which was decided by this court. But in neither of the cases cited do we find it decided, or necessarily to be implied

from what is decided, that an assessment is invalid, because made for the purpose of replacing funds which have been applied to losses for which they were not raised, or that the persons assessable for those losses are not the persons who are also assessable for the purpose of replacing the funds so applied. We think the fourth exception ought not to be sustained upon the ground which we have just been considering.

Another reason assigned for declaring the assessment erroneous under this exception, is because the receiver "had also assessed for the loss of the Taunton Oil Cloth Co., which was paid by the Company out of money hired by them but never assessed for.

The by-laws authorize the treasurer, under the direction of the directors, to "borrow or hire money in the name of the Corporation," and they also provide that "payment of losses shall be made within ninety days after the loss shall have been ascertained and proved." We infer from these provisions, the validity of which has not been questioned, that money may be borrowed or hired to pay losses. If this be so, and the money be borrowed according to the prescribed mode, which is not here disputed, it must be repaid ; and, if there be no funds on hand, it must be repaid by an assessment. It is true, that neither the charter nor the by-laws provide, in so many words, that an assessment may be made to repay borrowed money ; but the charter says, "in case any member shall sustain loss or damage over and above the then existing funds of said Corporation, the directors may assess such further sum or sums upon the policies of the members, in proportion to the premium paid at the time of insuring, as may be necessary to pay such damage or loss." We think it would be too strict a construction of this provision to hold, that the Company, by paying such damage or loss out of borrowed money, would lose the power of assessment which the provision confers ; for the need of an assessment for such sum or sums "as may be necessary to pay such damage or loss" would not cease in consequence of a change of the persons to be paid out of the proceeds of the assessment.

We have thus considered the exceptions presented, and we overrule them all. In doing so, we remark, that we mean to decide simply the points which are raised by the exceptions, taking for granted, what is apparently taken for granted on both sides, that no person is liable to be assessed for loss who was not a member of the Company when the loss occurred.

*Exceptions overruled.*